UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LEE E. WOODARD, as Trustee for
PATRICIA J. LOPES, and PATRICIA
J. LOPES as mother and natural guardian of
JOHN DOE, an infant under the age of 18 years,
And JOHN DOE,

        Plaintiffs,

v.              5:08-CV-00916 (NPM/GHL)

CITY OF SYRACUSE, CITY OF SYRACUSE
POLICE DEPARTMENT, SYRACUSE POLICE
OFFICER KEVIN CORCORAN, SYRACUSE
POLICE OFFICER ALBERT THOMPSON,
SYRACUSE POLICE OFFICER JOCELYN
ALLBRIGHT, SYRACUSE POLICE OFFICER
JOSEPH DeCARO, and DETECTIVE JAMIE
LOCASTRO, all individually and in their
Official capacities, and SYRACUSE POLICE
OFFICERS 1-10, all in their individual and
Official capacities,

        Defendants.

-------------------------------------------------------------------------------------------------------

| APPEARANCES | OF COUNSEL |
|---|---|
| Hoffman, Hubert & Hoffman, LLP<br>Attorney for plaintiffs<br>4629 Onondaga Boulevard<br>Syracuse, New York 13219 | Terrance J. Hoffman, Esq. |
| City of Syracuse Corporation Counsel<br>Attorney for defendants<br>233 E. Washington Street<br>Room 301, City Hall<br>Syracuse, New York 13202 | Mary Ann Doherty, Esq. |

NEAL P. McCURN, Senior U.S. District Court Judge

## MEMORANDUM - DECISION AND ORDER

Plaintiffs Lee E. Woodard, as trustee for Patricia J. Lopes ("Lopes"), and Patricia J. Lopes as mother and natural guardian of John Doe, an infant under the age of 18 years, and John Doe ("John Doe") bring this action seeking monetary and declaratory relief against the City of Syracuse ("City"), City of Syracuse Police Department ("PD"), Syracuse Police Officer Kevin Corcoran ("Corcoran"), Syracuse Police Officer Albert Thompson ("Thompson"), Syracuse Police Officer Jocelyn Allbright ("Allbright"), Syracuse Police Officer Joseph DeCaro ("DeCaro"), and Detective Jamie Locastro ("Locastro"), all individually and in their official capacities, and Syracuse Police Officers 1-10, all in their individual and official capacities (collectively, "police officer defendants"), pursuant to 42 U.S.C.A. § 1983.

Plaintiffs seek redress for violations of civil rights secured to them by the Fourth and Fourteenth Amendments to the United States Constitution, and Article I of the New York State Constitution. Plaintiffs allege, <u>inter alia</u>, unreasonable search and seizure of plaintiffs' property, and John Doe alleges seizure of his person, excessive use of force against him, unlawful imprisonment, and state law claims of assault and battery. Plaintiffs seek compensatory damages to be

assessed against all defendants and punitive damages against the police officer defendants in their individual capacities, together with the costs and disbursements of this action.

The court has jurisdiction over this matter pursuant to 42 U.S.C.A. § 1983 and 28 U.S.C.A. §§ 1331 and 1343(a)(3).  Currently before the court is defendants' motion for summary judgment (Doc. No. 31) pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.  For the reasons stated below, the motion for summary judgment will be granted in part and denied in part.

## I.   Facts and Procedural History

The following facts are taken from the plaintiffs' complaint and from the pleadings and depositions related to the present motion.  On the morning of September 18, 2007, John Doe, then 16 years of age, was in his grandmother's yard, which was across the street from the house where he lived with his mother and his siblings.  Plaintiffs assert that John Doe was at his grandmother's location to chop and stack firewood.  John Doe testified that the ax he was using became wedged in the wood and he was looking for an implement in his grandmother's shed with which to pry it loose.

In the interim, a "shots fired" call had come in to the Syracuse Police Department in the general vicinity of John Doe's location, specifically, one street

over.  The "shots fired" call was investigated by the responding officers, and involved a broken window on a DPW vehicle.  There was no bullet or projectile found by the investigating officer, defendant Corcoran, to indicate how the window was in fact broken.  The driver of the DPW loader was backing up the vehicle as his window shattered, and he told his DPW crew leader, Richard Shepard ("Shepard") that he saw people running.  Based on this information, Shepard set out in his truck to look for "anybody running." Doc. No. 31-13, p. 4. As John Doe was exiting his grandmother's shed, he was confronted by Shepard who asked John Doe what he was doing, and asked for permission to search the grandmother's garage, to which the shed was attached.  Permission was granted by John Doe, and Shepard searched the garage.  Once his search was complete, Shepard exited the garage and again attempted to question John Doe.  Two police officers, Thompson[1] and Corcoran, were walking through the woods behind the property, and Shepard states that he summoned them and told them, "Could you guys come over here?  I have permission to look in the garage." Id., p. 5.  Shepard and Thompson again searched the garage.  Corcoran asserts that he attempted to pat search John Doe, and after John Doe resisted, Corcoran handcuffed him and

---

[1] Defendant Albert Thompson was dismissed from the case by stipulation on July 17, 2009 (Doc. No. 29).

4

put him on the ground.  John Doe testified that Corcoran grabbed the back of his neck, slammed him into the garage, then slammed him onto the ground where Corcoran then applied handcuffs.  Other officers arrived on the scene, and Corcoran testified that he requested that Officer Allbright observe John Doe while Corcoran continued to investigate the "shots fired" call.  Allbright asserts that John Doe was out of control and she tried to gently calm him.  John Doe alleges that Allbright kneed him in the back, slammed him to the ground, pointed a taser gun at him and threatened to taser him.  John Doe was subsequently placed in a police vehicle, where he remained, still handcuffed.  John Doe alleges he was subjected to a third assault while in the back of the police car, when one of the defendants intentionally slammed the back door of the police car against one of his legs.

 Plaintiffs next allege that police officers unlawfully entered and searched their home.  John Doe's older brother testified that he did not have authority to allow the police into the home so he dialed telephoned his mother, plaintiff Patricia Lopes, at her place of employment and handed the phone to defendant DeCaro.  Lopes testified that she told DeCaro she would be home immediately, and that he did not have permission to enter the home.  DeCaro testified that Lopes gave him permission, and he told Detective Locastro, "we're all set."  DeCaro and

Locastro entered the house, and both men testified that they then proceeded upstairs with the intention to conduct a search of John Doe's bedroom. When they reached John Doe's bedroom, two friends of John Doe's older brother were in the room, and the officers testified that they focused their attention on the youths found in the bedroom. Both officers testified that no search of the house was conducted. John Doe's older brother testified that DeCaro and Locastro "flipped the bed up ... [and] went into the closet and got [John Doe's] muzzleloader ... and other hunting rifles." John Doe's older brother also testified that uniformed police officers were searching throughout the house while DeCaro and Locastro were in John Doe's bedroom. Lopes arrived home from work and found her son in the back of a police car, and police offers inside the residence, searching the premises. When told by Lopes to leave her home, the officers continued to remain in her home. Lopes also testified that she showed John Doe's valid hunting licenses to DeCaro and Locastro. No warrant to search the home was ever sought, and no charges were filed against John Doe.

## II.     Discussion

### A.     42 U.S.C.A. § 1983 Generally

In order to prevail on a claim under 42 U.S.C.A. § 1983, a plaintiff must establish the violation of a right secured by the Constitution and laws of the

United States, and that the violation was committed by a person acting under color of state law.  Section 1983 states in pertinent part that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable....

42 U.S.C.A. § 1983 (West 2007).

In the case at bar, it is undisputed that the defendants were acting under the color of state law.

### B.     Municipal and Municipal Employee Liability

As a preliminary matter, defendants argue that all claims against the SPD should be dismissed because a police department does not have its own legal identity to be sued.  Doc. No. 31-17.  The court notes that the SPD is a department within the City, and not a distinct separate legal entity.  Although a municipality is subject to suit pursuant to 42 U.S.C. § 1983, see Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 690 (1978), a municipal police

department "cannot sue or be sued because it doesn't exist separate and apart from the municipality and does not have its own legal identity." Baker v. Willett, 42 F. Supp.2d 192, 198 (N.D.N.Y. 1999). See also Leland v. Moran, 100 F. Supp.2d 140, 145 (N.D.N.Y. 2000). Consequently, the SPD has no legal capacity to sue or be sued, and plaintiff offers no objection to the removal of the SPD from the caption of this case. Doc. No. 35-9, p. 10. Accordingly, the court hereby strikes the SPD as a defendant in this case.

Municipalities may be held liable under § 1983 "only when a constitutional deprivation is inflicted pursuant to a government's policy or custom. To set forth a cognizable claim for municipal liability ..., a plaintiff must plead and prove (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Rivera v. City of Yonkers, 470 F.Supp.2d 402, 408 (S.D.N.Y. 2007) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Batista v. Rodriguez, 702 F.2d 393 (2d Cir. 1983) (internal quotations and citations omitted). Although the Supreme Court in Monell determined that a municipality was a "person" within the meaning of § 1983, the issue of the immunity of a municipality to punitive damages remained unresolved until the Court addressed the issue in City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). The Court unequivocally held that "a municipality is immune from

punitive damages under 42 U.S.C. § 1983." Id.  See also, DiSorbo v. Hoy, 343 F.3d 172, 182 (2d Cir. 2003) ("[P]unitive damages may not be awarded against a municipality under Monell").

In the case at bar, no evidentiary documentation has been proffered that supports a claim against the City, and plaintiff's memorandum of law makes no mention of any policy or custom that would support, condone or validate the defendant officers' alleged actions.  Accordingly, plaintiff's claims against the City of Syracuse are dismissed in their entirety.

### B.     Qualified Immunity

Defendants assert they are entitled to invoke the doctrine of qualified immunity for the defendant police officers, and argue they are entitled to summary judgment on these grounds.  "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." Saucier v. Katz, 533 U.S. 194, 201 (2001) (overruled on other grounds).  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier v. Katz, 533 U.S. at 200. "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability," and if the case is erroneously allowed to go to trial, the privilege is lost. Id. at 200-01 (internal quotations omitted). "If the law did not put the officer on notice that his conduct would be clearly unlawful, ... [dismissal] based on qualified immunity is appropriate." Id. at 202.

"A defendant official is entitled to qualified immunity if (1) the defendant's actions did not violate clearly established law, or (2) it was objectively reasonable for the defendant to believe that his actions did not violate such law." Ford v. Moore, 237 F.3d 156, 162 (2d Cir. 2001). "An officer's actions are objectively reasonable if officers of reasonable competence could disagree on the legality of the defendant's actions." Id. (internal quotations omitted).

In light of the Second Circuit's recent decision in <u>Parker v. Freshwater</u>, 623 F.3d 90 (2d Cir. 2010), which found that a genuine issue of material fact remained in regard to whether a police officer's use of pepper spray was reasonable, this court has been especially diligent in reviewing the facts in a case asserting qualified immunity to determine the reasonableness of the actions of officers involved. The question in <u>Freshwater</u> was whether the officer's use of pepper spray was reasonable, i.e., whether it was used before or after the subject was in handcuffs. Assessing the facts in the case at bar, the court finds that the plaintiff's allegations offer a similar question of fact. First, defendants argue that they made a legitimate <u>Terry</u>[2] stop of John Doe as he was in his grandmother's backyard. Plaintiffs allege that John Doe was assaulted, battered, terrorized and imprisoned without just cause and without right of law, first on private property, as well as on the public street immediately in front of the private property. Pursuant to <u>Parker</u>, <u>supra</u>, defendants' use of force, if proven, must be analyzed for reasonableness under the facts of this case. In addition, plaintiff Lopes argues that she never gave permission for the officers to enter and search her home. Defendant DeCaro

---

[2] "Law enforcement officers are authorized to conduct a traffic stop or detain an individual for investigative purposes, known as a <u>Terry</u> stop, so long as the officer has reasonable suspicion that an individual is or has been engaged in criminal activity." U.S. v. Wilson, --- F.Supp. 2d, 2010 WL 4984690 at * (N.D.N.Y. 2010) (citing  Terry v. Ohio, 392 U.S. 1, 30; <u>United States v. Bayless</u>, 201 F.3d 116, 132-33 (2d Cir.2000)).

maintains initially that permission was given, and secondly, that no search was ever conducted. Defendants argue that even if no permission was given to enter the house, Locastro and Allbright should be entitled to qualified immunity based on the objective reasonableness of the officers' choice made to enter the home based on DeCaro's statement that he had received permission from Lopes. After a careful review of the materials before it, and considering the inconsistencies and contradictions found in the defendant officers' depositions, the court cannot find that any officers are entitled to qualified immunity, as one or more genuine issues of material fact remain which must be decided by a jury.

    C.    **Legal Standard for Summary Judgment**

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82 (2d Cir. 2004). "[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom

summary judgment is sought[.]"  See Security Ins., 391 F.3d at 83, citing Anderson V. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), citing Anderson, 477 U.S. at 250-51.

While the initial burden of demonstrating the absence of a genuine issue of material fact falls upon the moving party, once that burden is met, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial," see Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002), (citing Fed. R. Civ. P. 56(c)), by a showing sufficient to establish the existence of every element essential to the party's case, and on which that party will bear the burden of proof at trial, see Peck v. Public Serv. Mut. Ins. Co., 326 F.3d 330, 337 (2d Cir. 2003), cert. denied, 124 S.Ct. 540 (2003).

In the case at bar, the court has determined supra that there are genuine issues of material fact remaining in this case, prohibiting a finding that the moving party is entitled to a judgment as a matter of law.  The depositions are rife with conflicting testimony and the respective parties' version of events is vastly contradictory.  Accordingly, defendants' motion for summary judgment is granted as to the City of Syracuse and the City of Syracuse Police Department, and denied

as to all remaining defendants.

### III. Conclusion

For the reasons set forth above, the court GRANTS defendants' motion for summary judgment against the City of Syracuse and the City of Syracuse Police Department from this action. The motion for summary judgment against all remaining defendants is DENIED.

SO ORDERED.

January 19, 2011

_____
Neal P. McCurn
Senior U.S. District Judge